## DEAN v. CITY OF BARTLESVILLE.

No. 24380.    March 10, 1936.

Rehearing Denied April 7, 1936.

Pennel & Harrison, for plaintiff in error.

J. T. Shipman, City Atty., for defendant in error.

PER CURIAM. Carrie Dean, hereinafter called plaintiff, sued the city of Bartlesville, a municipal corporation, hereinafter called defendant, in the district court of Washington county, Okla., for damages for serious physical injuries sustained by plaintiff when she fell into a ditch located in a park in the defendant city. The petition, filed March 19, 1932, alleged, in substance, that plaintiff was, and had been for many years, an actual resident of the defendant city; that the defendant is and was at all times mentioned a city of the first class, duly organized and existing; that the said defendant owned and operated a city park, known as block 23 of the original town of Bartlesville, Okla.; that said park was an open public recreation ground and used by the public for travel to and from different points of the city, and was a public thoroughfare for pedestrians, and was an important and frequent traveled way; that it was the duty of the defendant to maintain said park and all parts thereof in proper condition for public travel and use.

It is further alleged that some years prior to December 30, 1931, the said defendant constructed an open ditch, four and a half feet deep and twelve feet wide running north and south through the center of said park, the sides of which are perpendicular and made of concrete, and the bottom thereof made of concrete; that there is no guard, railing or barriers on the sides of said ditch; that the defendant erected certain foot bridges across the said ditch at various places, for the use of pedestrians to cross same.

It is further alleged that about 8:30 p. m. on December 30, 1931, plaintiff was lawfully traveling through and across said park from near the southwest corner thereof in a northeasterly direction to her home, and that said park was not lighted, and that it was the duty of the city to keep the same lighted and that it was accustomed to having the same lighted for the protection of pedestrians in said park; that she attempted to cross said ditch on a bridge approximately 100 feet north of the south line of the park, and in searching for and attempting to find said

bridge she fell into said ditch, and struck the bottom of same with great force and violence, and suffered severe and permanent injuries by the breaking of her right hip and right leg, as set forth in the petition; the petition describes injuries to the muscles of the plaintiff's leg, and to her nerves, and pain and suffering, and sets forth hospital treatment to the plaintiff's damage in the amount claimed in the petition.

The specific negligence charged is the construction of the open ditch through the public park, four and a half feet deep and twelve feet wide, and in maintaining and using same and permitting and inviting the public to use the same in that condition: in the construction and maintaining of the said ditch, without erecting any barrier, banister or railing along the sides of said ditch: in failing to properly light the park, and particularly without lighting the same on the evening of December 30, 1931, when it had been theretofore in the habit and custom of keeping said park lighted for the protection of persons using same.

It is alleged that plaintiff at the time of her injury was a strong, robust and able bodied person, free from all bodily ailments and was in perfect health, and that said injuries were caused without any negligence or fault upon her part; that proper claim for compensation for said injuries had been filed with the defendant, and that the claim had been disallowed.

The written claim, in proper form, is attached to the petition, as exhibit "A" and made a part thereof.

Defendant's answer, filed June 22, 1932, consisted in substance of a general denial; an allegation that only the westerly portion of the block was used as a public park; that no part was ever used as a thoroughfare or public way, other than a walk diagonally across said park from the southeast corner to the northwest corner; that no thoroughfare had ever existed in said park leading from near the southwesterly corner in a northeasterly direction, and that the public had never been invited to use said park as a public way in going in said direction; that on the west side and the north side of said park there was and had long existed a regulation concrete sidewalk for the accommodation of pedestrians going north and east of the southwest corner of said park, and that plaintiff on the night of her injury should have used said sidewalk and should not have attempted to cross said park, and that in so attempting to cross said park she did so at her own risk and peril; that said park is used as a play, recreation and rest park, and is not used as a means of travel from one place to another except as above stated; that said park had never been used as a play, recreation and rest park at night, except in the summer season when the weather is warm.

The answer closes with a plea of contributory negligence on the part of the plaintiff; that the injury was not caused by the negligence of the defendant, and that plaintiff is not entitled to recover.

The plaintiff filed a reply July 2, 1932, consisting of a general denial of the allegations of new matter contained in the answer.

The case was tried September 16, 1932.

The evidence on behalf of the plaintiff substantially supported every allegation of fact contained in the petition, and, in addition, showed that there were several churches in the vicinity of the southwest corner of the park, and that people living to the northeast of the park used the park in crossing from the northeast toward the southwest, in going to and from Sunday school and church, night and day, summer and winter. There was further testimony to the effect that the street foreman of the city of Bartlesville had discussed the matter of the danger of this open ditch with the members of the board of commissioners of the city a number of times, and that the commissioners talked of getting two-inch pipe and putting it along each side, but never had the money to do it with, and that the condition had remained substantially unchanged for seven or eight years.

At the close of the evidence of plaintiff, the defendant interposed a demurrer on the ground that same did not show a cause of action in favor of plaintiff. The court reserved a ruling on the demurrer, and instructed the defendant to put on its evidence, stating that he would take the matter up on the question of a directed verdict.

The evidence on behalf of the defendant showed that by actual measurement the ditch was two feet and nine inches deep at the sides and three feet eight inches deep at the center, and was ten feet wide; there was evidence admitted, over objection and exception of the plaintiff, to the effect that the engineer, who supervised the construction of the ditch, was a good engineer, above the average; there was testimony to the

effect that bridges across the ditch had hand rails, and that the bridges with hand rails were constructed over the ditch in connection with construction of the ditch. The park superintendent for the defendant testified that no good park superintendent would have thought there should be a railing along the ditch to keep people from falling in, children or anybody. There was testimony that there was a walk built, beginning at the northwest corner of the park and striking Third street about 25 feet west of the ditch, as a means of people crossing the park; that there was a pathway extending through the park from the southwest to the northeast; but that it had never been built up to a thoroughfare, but that it was cindered, sanded or graveled at the approach of the bridge, to keep people out of mud at the approach; that people used the park not only from the southeast to the northwest, but from northeast to the southwest, as a pathway and thoroughfare, and, had done so for years; that there had never been any objection on the part of the defendant city to such use.

At the end of all the testimony, the defendant moved for a directed verdict on the ground that plaintiff's case shows that plaintiff is not entitled to recover, which motion was sustained, and the jury was instructed to return a verdict for the defendant, which was done, over the objection and exception of the plaintiff.

Motion for new trial was overruled, and the case was lodged in the Supreme Court by petition in error, with case-made attached.

The situation presented when the defendant interposed its motion to instruct the jury to return a verdict in favor of the defendant is stated in the case, Crowe v. Peters, 171 Okla. 433, 43 P. (2d) 93, in the following language:

"The question presented on a motion to direct a verdict is whether, admitting the truth of all the evidence in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict in favor of such party."

The same rule is stated, in substance, in the following Oklahoma cases: Sand Springs Home v. Perin Engineering Co., 173 Okla. 142, 47 P. (2d) 142; Phillips Petroleum Co. v. Dale, 170 Okla. 267, 39 P. (2d) 546; Citizens' Bank of Millerton v. Bceson, 104 Okla. 293, 231 P. 844.

Such being the rule, it is not deemed necessary to state a summary of, or discuss, the evidence offered and received, but in considering the question as to the correctness of the ruling of the court in sustaining the motion to direct a verdict, the following may be considered, for the purpose of this decision, as having been established by the evidence:

The defendant maintained the park in question; it constructed the ditch and lined its sides and bottom with concrete, seven or eight years prior to the happening of this accident; that the ditch was not covered, and there were no guards or banisters along either side of same, nor were there any guides along the pathways leading to the bridges; for many years a large number of people had used the park, crossing from the northeasterly corner to the southwesterly corner, both night and day, summer and winter, for the purpose of going to church, and for other public uses, as a short-cut necessarily crossing the ditch in their travel, all with the knowledge of the defendant and without any objection on its behalf; attention of the commissioners of the defendant had been called to the fact that the ditch was dangerous unless guard rails were erected along each side; that bridges had been erected for the convenience of people using the park in crossing the ditch, and that the bridges had hand rails; the park was lighted on the night of December 25, 1931, but it was not lighted December 31, 1931, the night the plaintiff was injured; that the plaintiff crossed the park on an errand to a store, and in attempting to cross the park on her return toward home about 8:30 p. m., it being a dark night, wandered from the path, missed the bridge, and fell into the ditch, and received very serious painful and permanent injuries.

Nelson, Adm'r, v. City of Duluth (Minn.) 214 N. W. 774, was a suit against the city to recover for the wrongful death of one Hans Martin Nelson, who was driving a Ford automobile, about ten o'clock at night, October 10, 1925, through Lincoln Park in the city of Duluth. As the car approached a sharp curve it left the roadway and plunged over a rocky cliff into a creek bed below, killing the said Nelson. The roadway upon which the deceased was driving at the time in question extends from a boulevard in a southeasterly direction along the gorge of a creek and connects with another street near

the southeast corner of the park. The roadway is very irregular, with sharp curves and heavy grade, and at places the bed of the creek is far below the surface of the roadway. At the point of the accident, there is an S curve, with a heavy grade, and an almost perpendicular declivity on the left, to the bed of the creek, which was strewn with immense rocks and boulders. The night was cloudy and dark, and there was no artificial lighting and no fence or other barrier to apprise travelers of danger or prevent cars from going over the face of the cliff.

The park was legally owned, and was operated by the city, under authority of law. The roadway in question had been maintained by the city for use by the public for twelve years, in going from one part of the city to another, and as a part of the park driveway. It was used by the people living west of the park in going to and fro between certain main thoroughfares, and for deliveries to residences within the vicinity, and by farmers in going to and from the city. It was contended on behalf of the plaintiff that the city was negligent, in that the surface of the road at the point of the accident was out of repair, and the traveled portion thereof was too close to the precipice, and that on account of the shape and condition of the road at said point, proper care required the city to erect a warning or barrier of some kind which would protect those driving thereon, particularly in the nighttime, and that the failure to do so was negligence.

There was judgment for the plaintiff, and the case was appealed. The judgment was affirmed, the Supreme Court using the following language:

"Where a city constructs and maintains walks or roadways in its parks, which are used by the public as a way in passing from one public highway to another within the city, it is liable in damages for injuries resulting from dangerous conditions caused by the negligence of the city, its officers and employees."

The case Ackeret v. City of Minneapolis (Minn.) 151 N. W. 976, involves the question of liability of the defendant city, because on April 30, 1931, employees of the park board raked together a large quantity of leaves and other rubbish and burned it in the intersection of two or more walks and footpaths; when they quit work at night they left the ashes and unburned rubbish lying upon the walk. In the evening of the same day, Aloysius J. Ackeret, a child less than two years of age, while proceeding along the walk with his mother, stumbled and fell into the pile of ashes, and burned his hands upon the coals and heated refuse underneath the ashes to such an extent that his right hand is permanently crippled. There was judgment for the plaintiff and appeal. The court affirmed the judgment, using the following language:

"On examining the grounds upon which liability is imposed for defects in streets we find that the same grounds exist for imposing liability for defects in the walks and pathways in question. These walks and pathways were used not merely for purposes of pleasure and recreation, but as thoroughfares for passing from one part of the city to another. They differed from other walks provided by the city for the use of pedestrians, only in the fact they were within the limits of a park. We find no substantial distinction between such walks and those located along the public streets. * * * We find no sufficient ground for making a distinction between the walks and pathways in question, and the ordinary sidewalks provided by the city for the use of pedestrians and hold that the city is liable for dangerous conditions therein caused by its employees."

In the case of Aukenbrand v. Philadelphia, 52 Pa. Super. Ct. 581, the city was held liable for injuries caused a person by falling into a hole near a footpath in a public park near the limits of the city. The court held that the fact that the walk was within the limits of a public park does not change the general rule that a municipal corporation having the power and subject to the duty of maintaining its highways is chargeable with the consequence of defective conditions in the highways over which it has jurisdiction, and which the general public is invited to travel.

Under the authorities above quoted, it was clearly the duty of the defendant under the law to make the path in question reasonably safe for the use of persons desiring to cross the ditch, and it was for the jury to determine whether or not the duty had been discharged.

Defendant pleads that the plaintiff was guilty of contributory negligence in attempting to cross the park on the dark night, instead of using the walks which had been provided by the defendant on the end and the side of the park.

In the case Shawnee Gas & Electric Co. v. Griffith, 96 Okla. 261, 222 P. 235, the Gas

& Electric Company had many years prior to the happening of the accident attached one of its guy wires to the ground near the curb in the parking adjacent to a church, the other end being attached to the top of one of its poles located at the corner of the street, some distance from the point where the wire was attached to the ground. Plaintiff was fully aware of this condition, and had been attending church, and crossing the parking directly from the church to where she had hitched her horse for many years. On a dark night, she having in mind the presence of the guy wire, attempted to go far enough to avoid same, but in the darkness mistook the distance and stumbled and fell over the guy wire, receiving injuries, for which she brought suit for damages against the Gas & Electric Company. Among other defenses, it was contended that the plaintiff was guilty of contributory negligence in attempting to cross the parking on a very dark night, instead of going the short distance necessary to get into the street and walk safely and without danger to where her horse was hitched. There was judgment for the plaintiff, and on appeal the Supreme Court disposed of the contention as to contributory negligence in the following language (loc. cit. 96 Okla. 264):

"The matter of contributory negligence is a question of fact for the jury, and the jury having found for defendant in error, and there being competent evidence in the record to support its findings, we are not disposed to disturb it. Defendant in error was returning to her carriage from the church; was mindful of the presence of the wire, and tried to avoid it by walking west far enough to pass around it, but in the darkness mistook the distance. Defendant in error was only required to exercise ordinary care, and as to whether she did or not in view of all the circumstances surrounding her at the time, was a question of fact for the jury's sole determination."

Under the facts shown by this record, it was error for the trial court to sustain the motion to direct a verdict, and the judgment is hereby reversed, and the cause remanded to the district court of Washington county, Okla., with direction to grant plaintiff a new trial, and to take such further proceedings as shall be in accordance with the law. The cost of this appeal to be taxed to defendant.

The Supreme Court acknowledges the aid of Attorneys George C. Abernathy, Roscoe C. Arrington, and Charles E. Dierker in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Abernathy and approved by Mr. Arrington and Mr. Dierker, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH and PHELPS, JJ., absent.