### *CARNEY v. CHAPMAN et al.

No. 6392—Opinion Filed May 23, 1916.

Rehearing Denied July 18, 1916.

(158 Pac. 1125.)

1. Appeal and Error—Review—Harmless Error—Challenges to Jurors.

Where, in the trial of case, a party, in the formation of the jury, challenges a juror for cause, and the challenge is erroneously overruled, but where it appears from the record that such juror was challenged peremptorily, and did not serve on the trial jury, and it does not appear from the record that the challenging party exhausted the number of peremptory challenges to which she was entitled, or that she demanded and was refused the right to challenge any other objectionable juror, or that an objectionable juror was permitted to serve in the trial of the case, the ruling of the court overruling the challenge does not constitute reversible error.

2. Same—Instructions.

The court, in its instructions, defined a common-law marriage, and put on the prevailing party the burden of establishing a common-law marriage between the grantor and the mother of one John Alberson, from whom his grantor inherited the land in controversy. There was evidence in the case sufficient to establish an Indian custom marriage between said parties, as an Indian custom marriage was defined by other evidence in the case. The court's instruction, while denominating such marriage a "common-law" marriage, put on the prevailing party the burden of establishing the existence of every fact essential to an Indian custom marriage, as that relation was defined by the evidence. The prevailing party's pleadings denominated such marriage a "common-law" or "tribal custom marriage."

*Appealed to the Supreme Court of the United States.

Held, the misuse of the term "common-law marriage" was harmless error.

(Syllabus by Wilson, C.)

Error from District Court, Pontotoc County; Tom D. McKeown, Judge.

Action by J. C. Chapman against David Alberson and others. Judgment for plaintiff, and defendant Lottie Carney brings error. Affirmed.

C. F. Green and J. W. Bolen, for plaintiff in error.

Robt. Wimbish and W. C. Duncan, for defendant in error Chapman.

Opinion by WILSON, C. This action was originally instituted by the defendant in error, J. C. Chapman, who will, for convenience, be hereinafter referred to as the plaintiff. The action was one in ejectment against the defendant Tom Pendleton, who was a tenant in possession of the land in controversy, but as against the defendant Lottie Carney and the Albersons the action was one to quiet title. The defendant L. M. Chandler was, after the commencement of the suit, let in to defend the warranty clause of his lease to Pendleton. At the trial of the case the issues between the plaintiff and Pendleton and Chandler were, by stipulation, withdrawn from the consideration of the jury and submitted to the court, which rendered judgment sustaining Pendleton's right of possession under one of his leases for the term of such lease.

The issues between Lottie Carney and the Albersons, on one part, and the plaintiff, on the other, were, however, submitted to the jury, which returned a verdict for the plaintiff and against said defendants, which was in form, a verdict for the possession of the land. Upon this verdict a judgment was rendered by the court for the plaintiff and against the defendants Carney and the Albersons, quieting plaintiff's title to the land in controversy against the claims thereto of the said defendants. A motion for a new trial was in due time filed and overruled, and from said judgment and decree of the court the defendant Lottie Carney appealed to this court, making the plaintiff and her co-defendants in the lower court defendants in error.

Only three reasons are urged in the brief by the plaintiff in error why the judgment of the lower court should be reversed, they being, first, error of the court in overruling defendant's challenges to two jurors; second, error of the court in its instruction to the jury; and, third, error of the court in refusing to give an offered instruction.

Defendant Lottie Carney interposed challenges for cause to two of the jurors, which

were overruled by the court, and the order overruling the same excepted to at the time. Both of the challenged jurors were afterwards peremptorily challenged by defendant, and were excused from the jury, and did not take part in the trial of the case. There is nothing in the record from which it appears that any other juror objectionable to the defendant was permitted to remain on the trial panel by reason of defendant having had to exercise two of her peremptory challenges in excusing the two objectionable jurors in question, nor was it shown that she was denied the right to challenge any other juror, and it is not shown by the record that she even exercised her third peremptory challenge, she having been entitled to three such challenges. Without discussing the evidence on the voir dire examination of the objectionable jurors, to determine whether the court erred in overruling defendant's challenges for cause, we are impelled to the conclusion that the record does not reveal reversible error on part of the court in respect of its action in that particular.

It is a rule sustained by a decided weight of authority that error on part of the court in overruling a challenge to an objectionable juror is not material, if such juror did not serve as such on the trial of the case and the legal rights of the objecting party were not prejudiced thereby, and in view of the fact that the objectionable jurors in this case were peremptorily challenged and did not serve as jurors upon the trial of the case, and in view of the further fact that the record does not show that the complaining defendant exhausted her peremptory challenges, or that she demanded the right to challenge other objectionable jurors and that that right was denied her, we cannot consider that she was prejudiced by the action of the trial court in overruling her challenges for cause. 24 Cyc. 326; City of Guthrie v. Snyder, 43 Okla. 334, 143 Pac. 8; State v. Humphrey, 63 Or. 540, 128 Pac. 824; Rev. Laws 1910, sec. 6005.

Defendant predicates error on the action of the trial court in giving the following instruction, to wit:

"The court instructs the jury that a common-law marriage exists when a man and woman, capable of entering into a marriage contract, enter into an agreement to at once become husband and wife, and in pursuance of such agreement live together and cohabit as husband and wife. Such agreement to become husband and wife may be express or implied. An express agreement is where the parties thereto expressly agree. An implied agreement is where the conduct of the parties with reference to the marriage is such as to induce the belief that they intended to do that which their acts have indicated that they have done, and the issue born of such marriage is legitimate."

The giving of this instruction was error, for the reason that it was error to instruct on what was a common-law marriage. The land involved in the suit was the allotment of one John Alberson, deceased, a Chickasaw Indian. The plaintiff derived his title by warranty deed from one Charles Puller. Plaintiff claimed that Alberson was the son of said Puller and one Louisa James, an Indian woman, who became husband and wife by a common-law or tribal custom marriage in the year 1887; that Louisa subsequently died and that afterwards, in the month of June, 1911, John Alberson died, leaving his father, Charles Puller, plaintiff's grantor, his sole heir. The defendant Lottie Carney, now plaintiff in error, sister to Louisa James, claimed that Charles Puller and Louisa were never married, that John Alberson was the bastard son of Louisa, and that she, as his mother's sister and his aunt, was his sole surviving heir.

If plaintiff's contention that John Alberson was a legitimate son of Charles Puller and Louisa James was correct, then his (plaintiff's) title to the land involved in the controversy was good, and he rightly prevailed in the action; but if Lottie's contention that Charles and Louisa were never husband and wife, and that John was an illegitimate son of Louisa was correct, then she (Lottie) was the sole surviving heir of John, and inherited the title to the land in controversy, and should have prevailed in the lower court. Thus it will be seen that the question whether Charles and Louisa had become husband and wife by a common-law or tribal custom marriage in 1887 became the pivotal question in the trial court.

Plaintiff's petition alleged that Puller and Louisa James became husband and wife by a "common-law" or "tribal custom" marriage; but as it has been held (Wilson v. Owens, 86 Fed. 571, 30 C. C. A. 257) that what is known as a common-law marriage was not in force in the Indian Territory prior to May 2, 1890, there could not have been a common-law marriage between Puller and Louisa James in 1887, and the court's instruction defining a common-law marriage was not warranted by the facts. However, there was undisputed evidence in the case that at the time Charles and Louisa were alleged to have been married what is commonly termed tribal custom marriages were practiced among the Chickasaw Indians, and that when a man and woman of the tribe, qualified to enter the marriage state, took up with each other and consorted together as husband and wife, they were regarded by their tribe people as being married. By Act Cong. May 2, 1890, it was expressly provided:

"That all marriages heretofore contracted under the laws or tribal customs of any Indian nation now located in the Indian Territory are hereby declared valid, and the issue of such marriage shall be deemed legitimate and entitled to all inheritances of property or other rights, the same as in the case of issue of other forms of lawful marriage." 26 Stat. c. 182, p. 81, sec. 38; Chancey v. Whinnery, 47 Okla. 272, 147 Pac. 1036.

Therefore, if Puller and Louisa were married in 1887 according to their tribal custom, John, as the offspring of such marriage, was a legitimate child, entitled to inherit and transmit title to land as such. From an examination of the court's instructions in the case we are inclined to believe that the terms "common-law marriage" and "marriage by custom" were used interchangeably, and that the mere misuse of the term "common-law marriage" was harmless. The instruction complained of contained every element necessary to constitute a tribal custom marriage as that kind of a marriage was defined by the undisputed evidence in the case, and if it contained other elements, and thereby placed a greater burden of proof on the plaintiff than was warranted by the evidence, the defendant cannot be heard to complain of the error, for as to her it was harmless.

For the reasons just given why the court's erroneous instruction defining a common-law marriage was harmless, its refusal to give the defendant's two requested instructions, of which the defendant complains, was also harmless.

Another thing appeals to the writer hereof, which, though not urged in the briefs, we think renders harmless any error the court might have made, either by giving or refusing instructions or overruling defendant's challenges to the two jurors, and that is this: The issues between plaintiff, on one part, and Pendleton and Chandler, on the other, involved the right of possession of specific real property, and were issues proper to be submitted to a jury, unless a jury was waived; but the issues betwen the plaintiff and the defendant Carney were equitable, and the intervention of a jury was not mandatory, and any verdict which a jury to which such issues were submitted might have rendered would have been purely advisory, and unless approved by the court should properly have been disregarded by it in arriving at its judgment. As between Pendleton and Chandler, on one part, and the plaintiff, on the other, it was stipulated that the questions involved might be submitted to the court, and the issues as between those parties were specifically withdrawn from the jury. The court, by its judgment, approved the verdict of the jury as between the plaintiff and the defendant Carney, and decreed the title to the land involved in the action to be in the plaintiff. We have reviewed the evidence in the case,

and, while there was a marked conflict therein as to whether Puller and Louisa James were married according to a prevailing Indian custom, or whether their relations were illegitimate and lustful, there was sufficient evidence to reasonably sustain the judgment of the trial court, and that judgment has our approval.

Believing that any errors the court may have made were harmless, we recommend that the judgment be affirmed.

By the Court: It is so ordered.