## CITIZENS BANK OF MILLERTON v. BEESON.

No. 14624—Opinion Filed Oct. 7, 1924.

Rehearing Denied Dec. 16, 1924.

1. **Principal and Agent—Action Against Agent Alone—Necessary Allegations.**

Where a petition in an action against an agent shows on its face that he was a mere agent acting for a known principal in the matter, it discloses no cause of action unless it also alleges facts which bring him within one of those classes of agents who may be sued. In the latter case the facts must be alleged, and it is not sufficient to allege generally that he is such an agent.

2. **Estoppel—Estoppel by Conduct.**

Where a person has with knowledge of facts acted or conducted himself in a particular manner or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted thereon.

3. **Election of Remedies—Effect as Bar.**

The general rule is that when the law gives several means of redress or kinds of relief, predicated on conflicting theories, the election of one of them operates as a bar to the subsequent adoption of others.

4. **Conversion—Failure of Bank in Possession of Personalty to Foreclose Lien.**

A banker having a lien upon personal property of his customer in his possession, who neglects to sell the property within a reasonable time at a public sale in the open market, and takes possession thereof, treating the property as his own, is liable for its conversion.

5. **Same—Evidence of Conversion Sufficient.**

Record in the instant case examined, and held that the finding and judgment of the

trial court to the effect that there had been a conversion by the plaintiff of the cotton in controversy is reasonably supported by the evidence in the case.

**6. Appeal and Error—Harmless Error—Instruction.**

Although an instruction may contain an improper statement of law, if it is clearly apparent from the whole record that no prejudice has in fact resulted therefrom, the error will not be considered.

**7. Trial—Motion to Direct Verdict—Effect.**

The question presented on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of a party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough evidence to reasonably sustain a verdict should the jury find in accordance therewith.

**8. Same—Motion Properly Denied.**

Record in the instant case examined, and held, that the trial court did not err in overruling motion of the plaintiff for a directed verdict at the close of all the testimony.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, McCurtain County: G. M. Barrett, Judge.

Action by the Bank of Millerton against J. M. Beeson and J. W. Guest, to recover a money judgment. Judgment for plaintiff, and plaintiff appeals. Affirmed.

Etheredge & Jones, for plaintiff in error.

John C. Head, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of McCurtain county by the Bank of Millerton, as plaintiff, against J. M. Beeson and J. W. Guest, defendants in error, as defendants, to recover the sum of $1,200, which it is claimed the Bank of Millerton paid to take care of an overdraft by which the defendants had overdrawn their account.

After suit was brought, the Bank of Millerton became insolvent, was taken over by the Bank Commissioner of the State of Oklahoma, reorganized, and the Citizens Bank of Millerton having acquired the assets of the defunct Bank of Millerton, was by order of the court substituted as party plaintiff in the court below, and is the plaintiff in error in this court.

The parties will be hereinafter referred to as they appeared in the trial court.

The action of the plaintiff was based upon several checks signed by J. M. Beeson by J. W. Guest in different amounts, aggregating the sum of $1,768.80, drawn upon the plaintiff bank on September 21, 22, and 23, 1921, made payable to various parties from whom it is claimed the defendant Beeson, acting through his agent, J. W. Guest, had bought cotton, and which checks it is claimed the plaintiff paid, charging the amount thereof to the account of the defendant Beeson.

Plaintiff alleged further that thereafter the defendants turned over to the plaintiff 11 bales of cotton to be sold and proceeds applied on the amount due from the defendants, and that the plaintiff sold said cotton at the highest market value, crediting the amount received in the sum of $568.80 upon the amount of said over-draft, leaving a balance due of $1,200, with interest at the rate of six per cent., making a total sum of $1,271.05, for which it demanded judgment. Copies of the various checks were attached to and made a part of the petition.

The defendant Beeson filed his separate answer, duly verified, denying generally the allegation contained in the petition, and specifically denying that he had drawn the checks, or that he had authorized any one else to do so for him, that the plaintiff released him from all liability and carried said drafts and said cotton as a speculation for the benefit of itself and other persons, and disclaimed and denied any and all liability. No answer was filed by the defendant Guest

A reply in the nature of a general denial was filed by the plaintiff, and cause proceeded to trial before the court and a jury resulting in a verdict and judgment for the plaintiff in a sum of $131.92. Motion for a new trial was filed by plaintiff and overruled, exceptions allowed, and plaintiff brings cause regularly on appeal to this court on petition in error and case-made.

It will be observed from an examination of the pleadings that one of the issues presented thereby was whether or not the defendant Guest, at the time that he purchased the cotton in controversy and signed the name of the defendant Beeson to the checks given in payment therefor, was acting within the scope of his authority as agent, so as to bind and make the defendant Beeson liable.

An examination of the record discloses that the trial revolved in part around the controverted issue thus presented by the pleadings. The question, however, of the authority of Guest in the purchase of the

cotton in question, and to sign Beeson's name to the disputed checks, was submitted to the jury, and the jury by its verdict found, in effect, that Guest did have such authority, and that Beeson was bound. This being true it follows that the alleged errors committed by the trial court in its instructions to the jury on the question of agency, and the alleged improper admission of evidence offered by the defendant to prove a want of authority on the part of Guest, if any such errors were committed, are errors of which the plaintiff will not be heard to complain.

The vital question for determination on this appeal, as we interpret the record, arose out of the actions of the trial court in admitting certain testimony offered by the defendant Beeson to prove that there had been a conversion by the plaintiff of the cotton in controversy whereby the plaintiff was denied any recovery in excess of the difference between the price paid for the cotton and the highest market price at which it could have been sold at the time of the alleged conversion, and in instructing the jury upon the theory that plaintiff had a lien on the cotton at all times subsequent to the date on which the defendant Beeson refused to pay the overdraft.

It is first contended, however, that the trial court erred in sustaining the objection of the defendant Guest to the introduction of any evidence, and in dismissing the action as to him. This contention cannot be sustained. Guest was not a drawer of the checks in the sense that he was the person bound thereby. He actually signed the name of Beeson thereto, but the act purported to be the act of Beeson and not the act of Guest.

Not being the drawer of the checks, in order to state a cause of action against Guest it was incumbent upon the pleader to plead facts which would show the obligation of Guest on his warrant of authority to draw in Beeson's name. There was no allegation of agency, and when counsel stated in his opening statement that the instruments were executed by Beeson, by his agent, and were the several obligations of Beeson, we think the court properly dismissed the action as to Guest.

Section 302, Comp. Stat. 1921, provides:

"In an action founded upon a bill of exchange or other instrument for the unconditional payment of money only it shall be sufficient for a party to give a copy of the instrument and indorsements thereon and to state that there is due him, in such instruments, from the adverse party, a specified sum of money. When others than the makers of a promissory note, or the acceptors of a bill of exchange, are parties in the action, it shall be necessary to state also the kind of liability of the several parties, and the facts as they may be which fix their liability."

In 2 Corpus Juris, page 907, it is stated:

"Where a petition, in an action against an agent, shows on its face that he was a mere agent acting for a known principal in the matter, it discloses no cause of action, unless it also alleges facts which bring him within one of those classes of agents who may be sued. In the latter case the facts must be alleged and it is not sufficient to allege generally that he is such an agent."

See, also, 31 Cyc., page 6565: King v. Stevenson, 29 Okla. 29, 116 Pac. 183.

We think the trial court committed no error in dismissing the action as to Guest. It is next contended that the trial court erred in admitting evidence tending to show that there had been a conversion by the plaintiff of the cotton in controversy. It is conceded that this evidence was admitted upon the theory that the plaintiff had a lien on the cotton at all times after the defendant Beeson had refused a demand by the bank for the payment of the overdraft represented by the aggregate sum of the checks.

It is contended by the plaintiff that it could not have had a lien on the cotton for the reason that it did not come into possession of the compress tickets until some six months after the cotton had been bought; that although it had the bill of lading for the cotton, the same had been procured by Beeson for shipment to Bulley & Sons of Dallas, Texas, and that it did not receive compress tickets, which constitute the sole evidence of possession, until some six months after the purchase of the cotton; that although the cotton was never shipped to Bulley & Sons, they received the compress tickets from a warehouse at Hugo, Okla., to which place the cotton had moved, some two or three months after it had been bought and deposited on the railway platform at Millerton.

Whatever may be the effect of these facts in the abstract upon the question of actual possession, it is clear to our minds that at all times subsequent to the date on which Beeson declined payment of the bank checks, the plaintiff bank through its officials was asserting a lien upon the cotton, and continued its assertion thereof, until the time of the trial.

The declarations and conduct of the official of the plaintiff bank are explainable upon no other theory than that the bank was holding the cotton as security for the

payment of the amount by which the defendant Beeson had overdrawn his account, pursuant to the provisions of section 7434, Comp. Stat. 1921, giving a banker a lien dependent upon possession of the property of his customer.

Mr. Robb, cashier of the plaintiff bank, testified that immediately upon the defendant Beeson refusing to pay the overdraft charged against him at the bank, he charged the cotton to the cotton account of the bank, and refused to let Beeson have the cotton unless he paid what the bank had against him. It is no explanation of this admission to say that Beeson was merely seeking to buy the cotton. A situation of this kind could have been disposed of by simply disclaiming any interest in the cotton. On the other hand, we find the bank asserting a claim to the cotton based on its possession as security for the amount owing by the defendant Beeson, and charging the cotton to its cotton account presumably as collateral security for the open account which it carried on its books against Beeson personally.

In this situation, we think the bank has estopped itself to assert that it did not have a lien upon the cotton by reason of not having had possession of the compress tickets or for any other reason. In 21 Corpus Juris, page 1202, it is said:

"Where a person has with knowledge of the facts acted or conducted himself in a particular manner or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted thereon"

In Trust & Savings Bank v. Bloodworth, 70 Okla. 317, 174 Pac. 545, our court said quoting with approval from Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209:

"The general rule is that when the law gives several means of redress or kinds of relief, predicated on conflicting theories, the election of one of them operates as a bar to the subsequent adoption of others."

The evidence which it is claimed the court improperly admitted was to the effect that on several occasions after the plaintiff bank had commenced carrying the cotton in its cotton account, it refused an offer made by the defendant Beeson of 28 cents per pound, and held on to the cotton in the hope that the price would get better. We think this testimony was competent, and tended to establish a conversion of the cotton by the bank.

It was the duty of the plaintiff bank under its lien to dispose of the cotton within a reasonable time at a public sale in the open market, and its failure so to do, and the taking possession of the cotton, treating it as its own instead of foreclosing, makes it liable as for conversion.

See Peet v. Peoples Trust (Cal.) 204 Pac. 413; Howery v. Hoover, 66 N. W. 772. In Halton v. Nichols & Shepard Company, 64 Okla. 184, 166 Pac. 745, it is said:

"Plaintiff did not foreclose its mortgage in any manner, but removed the property from this state and beyond the reach of any process of the court in which it had been held subject to attachment so that said judgment could not be enforced against it, and redelivered it to the mortgagor. These facts constituted a conversion of the property. Section 3843, Rev. Laws 1910, provides: 'In case of personal property its wrongful conversion by the person holding the lien extinguishes the lien thereon'. Under this section when the plaintiff failed to foreclose its mortgage and wrongfully removed the property from this state and redelivered it to Brown, its lien thereon was destroyed"

The only evidence in the record of the highest market price at which the cotton would have been sold after the plaintiff came into possession thereof as lienholder was the admission of Mr. Robb, cashier of the plaintiff bank, that he had been offered 28 cents for the cotton by the defendant Beeson, and we think the verdict of the jury in charging the plaintiff with the valuation thus placed upon the cotton was correct, and should be sustained unless the court committed reversible error in its instruction No. 3. Instruction No. 3 is as follows:

"You are instructed, gentlemen of the jury, that the Bank of Millerton and its successor and officers and agents had a right to the possession of said cotton checks after the said cotton had been shipped to the cotton firm mentioned in the testimony in the trial of the case, and that said bank had a lien on said cotton for the payment of the amount due it, if any, by J. M. Beeson, for the money expended by said bank in the payment of said checks, but you are further instructed in this regard, that the plaintiff bank had no right or authority to sell said cotton and depart with its control as a lienholder thereof, except by proper notice and advertisement at public sale. and you are therefore instructed that if you find and believe from the evidence in this case that the said plaintiff bank, by and through its officers and agents exercising its right of possession of said cotton as a lienholder, sold said cotton at private sale, then the plaintiff bank, even though you may find and believe from the evidence that the plaintiff is entitled to recover against the defendant herein, cannot recover herein a greater sum

than the difference, if any, claimed by the plaintiff to be due it and the highest market price at which said cotton could have been sold at any time since the plaintiff came into possession as a lienholder of said cotton."

This instruction is severely criticised by the plaintiff in that while it recognized and treated the bank as being in possession of the cotton as a lienholder at the time it sold the same at a private sale, it nevertheless charged it with the highest market price at which the cotton could have been sold at any time after the bank came into possession of the cotton as a lienholder.

It is argued that it would make no difference whether the property was sold at a public or private sale, or whether it was sold at all if the bank in fact converted the cotton. We have already found that there was evidence in the record tending to show a conversion of the cotton by the bank sufficient to sustain the verdict of the jury, and while the instruction criticized may have overlooked this testimony and may have treated the relationship of the bank to the defendant as that of a lienholder in possession, such instruction in its entirety was more favorable to the plaintiff than it was entitled to.

The instruction is not open to the criticism made that it incorrectly assumed that the bank had a lien on the cotton for the payment of the amount due it in view of circumstances heretofore noted, by which the bank was estopped to deny its status as lienholder, and in view of other facts and circumstances disclosed by the record reasonably tending to support the verdict of the jury that there had been a conversion of the cotton after the bank's status as lienholder had been established, we do not think the instruction criticized operated to the substantial prejudice of the plaintiff sufficient to justify a reversal. The instruction correctly required the jury to charge the plaintiff with the highest market price at which the cotton could have been sold at any time after the plaintiff took possession as lienholder, and the further fact that the instruction overlooked evidence tending to show abandonment by the bank of its lien, and a conversion of the cotton was in the nature of a concession to the plaintiff of which it ought not to complain, and did not, in our judgment, render the instruction fundamentally wrong.

The refusal of the trial court to give requested instruction No. 5 was not error inasmuch as this instruction failed to take into consideration any evidence offered tending to show a conversion of the cotton by the bank. In view of competent evidence introduced by the defendant tending to show that there had been a conversion by the bank of the cotton in controversy, and that the plaintiff had estopped itself to deny that it had possession of the cotton as lienholder, the trial court was right in submitting these matters to the jury for determination, and did not err, therefore, in overruling the plaintiff's request for a peremptory instruction.

Our conclusion based upon a careful examination of the entire record is that the case was properly submitted to the jury under instructions substantially defining the issues presented under pleadings and evidence in the case, and that no prejudicial errors sufficient to justify a reversal were committed.

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.