Eddie COX and John Allen Phillips II, Plaintiffs in Error,

v.

L. P. KELLEY, Defendant in Error.

No. 36811.

Supreme Court of Oklahoma.

Feb. 28, 1956.

Rehearing Denied April 10, 1956.

King & Wadlington, Ada, John Allen Phillips II, Durant, for plaintiffs in error.

Joe Ralls, J. B. Maxey, Atoka, for defendant in error.

HUNT, Justice.

The defendant in error, L. P. Kelley, instituted this action against the plaintiffs in error, Eddie Cox and John Allen Phillips, II, on May 1, 1953, to quiet title to one hundred sixty acres of land in Atoka County, and alleged in his petition that he was the owner, in possession, and that the defendants claim some adverse right, title or interest in and to the land and pray judgment quieting his title thereto as against the claims of the defendants. The defendants, Cox and Phillips, filed a joint answer and cross petition wherein they deny that the plaintiff was in possession of the land or ever had been, and allege that they were

in the actual possession and that the defendant, Eddie Cox, had been in possession thereof for a long time prior to the commencement of the action, and deny that plaintiff had any right, title or interest in the real estate, and further allege that Eddie Cox is the owner in fee simple of the land, except an undivided twenty acre mineral interest, which Cox had conveyed to Phillips, and allege that the real estate was conveyed by segregated coal and asphalt land patent to Winnie Selsor in 1920, pursuant to her purchase thereof at public sale, which patent was filed and recorded on October 8, 1941; that thereafter, on November 18, 1950, Winnie Selsor conveyed the real estate to Eddie Cox by deed, which was recorded on November 22, 1950. By cross petition the said defendants allege that L. M. Thompson, who was made a party to the action, claimed some adverse title to the land, which constituted a cloud upon the title of the defendants, and further allege that the plaintiff Kelley claimed title to the land under a purported resale tax deed issued by the County Treasurer to the Board of County Commissioners under date of May 21, 1940, and by a deed issued by the Board of County Commissioners to L. P. Kelley on July 23, 1940; that plaintiff never obtained possession of the real estate and that his claim thereto is barred by the five-year statute of limitation, subdivision (3) of Section 93, Title 12 O.S.1951, that the defendants and their predecessor in title have been at all times since the issuance of the purported resale tax deed in the continuous, actual, exclusive and adverse possession of the real estate, that the resale deed is void because the real estate was advertised and sold at resale for taxes, a portion of which were not due and delinquent at the time of the first publication of the notice of tax sale, that the resale was based on an original sale, of which there was not sufficient notice; that the assessments for taxation of the land for several years upon which resale was based were null and void and the defendant Cox tendered payment of all taxes, penalties and costs, which is required in order to redeem the land from the purported sale. The defendants prayed that the title to the real estate be decreed in them according to their respective interests, and that the purported resale tax deed and county deed under which plaintiff claims title be cancelled, also the 1953 lease to L. M. Thompson. The plaintiff Kelley filed reply to the answer and cross petition of the defendants, Cox and Phillips, denying the allegations thereof, and further alleges that the deed executed by Winnie Selsor to Eddie Cox on November 18, 1950 conveyed no title to the land because the grantor was a full blood Creek Indian and the land was restricted land and deed was never approved by the County Court nor the Secretary of the Interior, and that whatever title and interest Winnie Selsor may have had in the land was cancelled by the resale of the land for taxes on May 13, 1940, and the resale deed issued pursuant thereto, and was further void because at the time of the execution of the deed by the grantor, Winnie Selsor, the plaintiff Kelley was in actual peaceable and adverse possession of the land and the said grantor had not been in the actual or constructive possession thereof since May 13, 1940 to November 18, 1950, and had not leased or demanded any rents, revenue or profits from the land for more than twelve months prior to the execution of the deed to Eddie Cox and the deed was champertous and void, and the defendant Cox and his grantee have no right to maintain their cross action.

Plaintiff further alleged that he is the owner and in possession of the land and has been since July 23, 1940, when deed was issued by the Board of County Commissioners to him, that he has been in the actual, constructive, peaceable, adverse possession of the land since the date of the execution and recording of the deed for a period of more than five years, and that after the expiration of five years from the recording of the deed the plaintiff's title became absolute and plaintiff pleads the five-year statute of limitation, Title 12 O.S.1951 § 93, paragraphs (3) and (6). Plaintiff denied the right of the defendant Cox to redeem the land and prayed that the title to the land be quieted in him as against the claims of the defendants.

Application was filed by the defendants, Cox and Phillips, to disqualify the District

Judge on the ground of bias and prejudice, based on acts and alleged statements by the court concerning the defendant Cox, which application was overruled.

On motion of plaintiff the County Treasurer and Board of County Commissioners of Atoka County were made parties defendant in the action and the Treasurer and Board of County Commissioners answered by general denial and claimed a lien on the land for all taxes assessed or assessable thereon since May 13, 1940.

The record shows that Winnie Selsor was also made a party to the action and served with summons, but filed no pleading. Upon a trial of the issues judgment was entered for the plaintiff, L. P. Kelley, quieting title to the land in him and barring the defendants from claiming or asserting any right, title or interest in the land.

Findings of fact, chiefly in accord with the allegations of plaintiff's petition, his reply and answer to the defendants' answer and cross petition, were made by the trial court, the substance thereof being in part as follows.: The court. found that L. P. Kelley purchased the land by a deed from Atoka County on the 23rd day of July, 1940, which deed was recorded in the office of the County Clerk on the same date as its execution; that the said Kelley went into possession of the described property by and through Herman Johnson, his agent, and has maintained continuous open, notorious and adverse possession ever since; that the five-year statute of limitation is applicable in this case and does apply, that the quit claim deed executed by Winnie Selsor to Eddie Cox on November 18, 1950, and duly recorded, is champertous and void as to the defendant in error Kelley; that Eddie Cox is not now and has never been in possession of the described property, that Winnie Selsor never rented the lands and received no rents nor profits at any time since the land was purchased by her, that she paid no taxes on the land for any of the years in which it was sold for taxes, that is, from 1924 to the time of the deed from Atoka County to L. P. Kelley; that the deed from Winnie Selsor to Eddie Cox was champertous because the grantor had never been in possession

of the land at the time of the execution of the deed. The defendants, Eddie Cox and John Allen Phillips II, filed motion for new trial, which was overruled, and they appealed.

The fifth proposition presented by the plaintiffs in error in support of their appeal is based on the action of the trial court in overruling the application of the plaintiffs in error to the trial judge to disqualify as trial judge on the grounds of bias and prejudice, as shown by alleged acts and statements by the judge with respect to Eddie Cox, a defendant below.

On March 15, 1954 this court denied the application of the plaintiffs in error to assume original jurisdiction and issue a writ of mandamus to require the trial judge to certify his disqualification in the case. A similar application was presented to the trial judge by the plaintiffs in error in the case of Cox v. Montgomery, Okl., 282 P.2d 734, 737, in which this court said: "In our opinion the defendant, Eddie Cox, has failed to establish bias and prejudice on the part of the trial court sufficiently to necessitate a new trial." We here apply and adopt the same holding and conclusion in the present case and find no reversible error in the denial of the application in the present action.

The first proposition presented by plaintiffs in error in support of their specifications of error relate to the validity of the tax resale deed and the deed from the Board of County Commissioners of Atoka County to the defendant in error, L. P. Kelley, which deed was dated and recorded on July 23, 1940, it being asserted that the trial court should have held the resale tax deed void. In view of our conclusion and holding, hereinafter set forth, it is unnecessary to determine the validity of such deed.

"Where purchaser at void tax sale enters into possession and files an action to quiet title against former owner, claiming title by limitations, and former owner pleads invalidity of tax deed under which plaintiff entered into possession, and prays that title be quieted in him plaintiff may plead the five-year statute of limitation provided in 12 O.S.

1951 § 93, as amended in 1949, regardless of whether tax deed is valid or void." Woods v. Phillips Petroleum Co., 207 Okl. 490, 251 P.2d 505, 506.

See also Fletcher v. Twyford, Okl., 267 P. 2d 554, and Williams v. Bailey, Okl., 268 P. 2d 868, and other decisions from this court which apply the same rule.

The second proposition presented by the plaintiffs in error asserts that the court erred in holding the deed from Winnie Selsor to the plaintiff in error Cox in 1950 was champertous and void.

Their third proposition alleges error of the court in holding that the defendant in error Kelley acquired title to the land by prescription and that the claims of plaintiff in error are barred by limitation.

Under their fourth proposition it is urged that the court erred in finding that the plaintiffs in error are not in possession of the land, and in conclusion asserts that judgment should be entered or directed for plaintiffs in error.

The principal question and issue involved in the above propositions relates to the possession of the land and will be considered together. The patent, the tax deeds and other instruments of record pertaining to the land involved were introduced in evidence. L. P. Kelley, who was plaintiff in the trial court, testified in part as follows:

"Q. You purchased the land from the County and paid for it? A. Yes, I did.

"Q. Mr. Kelley, after you purchased this land from Atoka County what did you do about taking possession of the land? A. I turned the land over to Herman Johnson to look after.

"Q. Did you make a deal with Herman Johnson to look after this land? A. Yes, I did.

"Q. What was your deal with him? A. I just turned it over to him—gave him the pasture and told him to see that no timber was stolen off of it, for him to look after the place and take care of it for me.

"Q. How come you to turn it over to Johnson? A. Well, I knew him,

and I wanted somebody to take care of it and I saw him about it and he agreed to take it and look after it for me.

"Q. He lives close to the land, does he? A. Yes, sir."

The witness also testified that he leased the land for pasture in 1952 to L. E. Thompson, that in 1950 he sold the timber on the land to Mr. Woods for $25. He testified that he paid the taxes on the land from 1941 to 1953, inclusive.

Herman Johnson, called by plaintiff, testified in part as follows:

"Q. Are you acquainted with Paul Kelley (the plaintiff)? A. Yes, sir.

"Q. Are you acquainted with the Southeast Quarter of Section 18, Township 1 North, Range 12 East? A. Yes, sir.

"Q. Did you have anything to do with that land? A. Well, along between 1940 and 1941, I guess it was, I made an agreement with Paul Kelley to see after it. He let me run cattle in there. I had cattle in there on it.

"Q. Who did you see about getting this land? A. Paul Kelley.

"Q. What agreement did you make with Kelley about it? A. He told me I could put cattle in there and could use it as a pasture if I would kinder see about the place for him, and not let anybody cut timber off of it.

"Q. And you took possession of it in that way? A. Yes, sir.

"Q. What kind of land is it? A. I would just call it hillside timber land.

"Q. How long have you looked after the place for Kelley? A. Well, from then on up to about 1950, I believe it was.

"Q. How often were you on this land? A. Quite often.

"Q. About how often? A. I would say fifty times a year.

"Q. Looking after your cattle? A. Yes, sir.

"Q. Was there any timber cut off of there that you know of? A. Yes, there has been some timber cut off, but

I think that timber was cut in 1950 or 1951.

"Q. You didn't have anything to do with that timber cutting? A. No, sir."

On cross-examination he was asked:

"Q. You say you ran cattle on that land from 1940· to 1950? A. Yes, I think past that.

"Q. About how many head did you have running in there? A. Thirty-five or forty.

"Q. But you quit some time in 1950 using that? A. Yes, sir.

"Q. When, in 1950? A. I couldn't say, I imagine in the fall of 1949 or the fall of 1950 when .the cattle come in. I didn't turn them back out.

"Q. Do you know what year you quit putting cattle down there? A. I couldn't be positive."

·Mr. Woods testified on behalf of the plaintiff and stated in part that in 1950 he purchased the timber on the land involved for $25 that he talked to Kelley about the timber some months before he made the deal and that he had been on the land looking the timber over prior to the contract; that he sent a man to cut the timber and that the man told him he cut all the timber of any value off the Kelley land.

Mr. Thompson testified that he rented the land for the grass in 1952, that he put some cattle, 15 or 20, in the pasture. He was asked how much he paid Kelley for the lease and answered: "He just wanted me to kind of watch after it. I was to watch after it and keep people from cutting his timber. I believe I did give him the cost money, $10.00, anyway there was a little something I paid, I don't remember for sure just how much, but it was something."

The deposition of Winnie Selsor was put in evidence, in which she testified that she sold the land in question to Eddie Cox in 1950, that he paid her $50 for it, which sum also included payment on another tract of land; that she never received any rental from the place; that at the time she sold the land to Mr. Cox she guessed there was some taxes due on the land, that she be-lieved the record shows that the last taxes that were paid was in 1924, that she knew taxes were due at the end of each year and that at and prior to the time she sold the land to Cox she knew that he had been using the land along with other land, knew that he had horses on it; that Cox paid her no rental for the use of the land prior to the time he bought it.

The defendant, Eddie Cox, testified in part that in 1952 he executed a mineral deed to his co-defendant, Phillips, to an un-divided twenty acre mineral interest in the land in controversy and sold an oil and gas lease on the land in December, 1950, which lease expired for non-payment of rental, and testified that he owned and held leases on other tracts of land in the vicinity of the land here in controversy. He stated that he had been using the land involved in this action since 1948, when he bought 6 horses that were located or grazing on the land from a Mr. Latham, that he made it his salt ground and had been putting salt on the land for five or six years; that he did not claim title to the land until he got a deed to it from Winnie Selsor in 1950, at which time he was using the land, with her consent; that he did not pay her anything for such use, that when he was trying to purchase the land from Winnie Selsor he knew that Kelley had a tax deed to the land, but didn't think he had title; that later he put several more head of stock in the pasture where the land in question was located; that he stopped the timber cutters from cutting the timber on the land and denied that Herman Johnson had any stock on the land in 1950.

The plaintiffs in error called other wit-nesses who were or had been residing in the vicinity of the land in question, who testified chiefly about when and who had cattle on the open range where the land was situated, which open range consisted of several hun-dred acres, and testified about if and when Herman Johnson had cattle on the land or on the open range surrounding it, and as to when Johnson disposed of his cattle. The land in question was described as unim-proved, unfenced, except along or near the north side, surface was hilly or mountain-ous, and poor wooded land.

In the opinion in the case of Mc-Grath v. Eichoff, 187 Okl. 64, 100 P.2d 880, 886, in discussing adverse possession, it is stated:

"The law does not attempt to list all of the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such a determination in a given case must largely depend upon 'the situation of the parties, the size and extent of the land, and the purpose for which it is adapted.'"

It also cites Collier v. Bartlett, 71 Okl. 133, 175 P. 247, which holds:

"What constitutes 'possession' of land is a mixed question of law and fact; 'actual possession' consisting of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state."

"3. Personal occupancy is not a necessary element of the possession required to perfect prescriptive title and is not contemplated in the periods of limitation prescribed by 12 O.S.1951 § 93." Tucker v. McCrory, Okl., 266 P.2d 433.

"3. * * * The payment of taxes is not a controlling circumstance, but it is one of the means whereby a claim of ownership is asserted, and a failure to pay taxes weakens a claim of ownership by adverse possession." Anderson v. Francis, 177 Okl. 47, 57 P.2d 619, 620.

The trial court found and adjudged that the defendant in error, L. P. Kelley, had and held adverse possession of the land from and since July 23, 1940, and that the five-year statute of limitation applied and barred the claims of plaintiffs in error, and further found and adjudged that the plaintiff in error, Eddie Cox, had never been in possession of the premises, and that Winnie Selsor was not in possession of the land at the time of the execution of the deed to Eddie Cox and had received no rents or profits from the land since it was purchased by her, and that the quit claim deed from Winnie Selsor to Eddie Cox on November 18, 1950 was champertous and void as to the defendant in error Kelley, and quieted title in him and barred and restrained the plaintiffs in error from claiming or asserting any right, title or interest in the land.

"1. A deed to real property by a grantor out of possession who has not been in possession for a year next preceding date of conveyance, or has not within a year taken rents and profits, or those under whom he claims, is void as against any person or persons in adverse possession." Cox v. Montgomery, Okl., 282 P.2d 734.

Mayer v. Pettigrew, Okl., 272 P.2d 411, holds:

"2. Where evidence in case of equitable cognizance is conflicting, trial court's finding thereon will not be disturbed on appeal unless clearly against the weight thereof."

The trial court in the present action saw and heard the witnesses and was in a much better position to weigh their testimony than are we. We are unable to say that the judgment is against the clear weight of the evidence, and it is therefore affirmed.