Eddie COX, Kenneth Sharp, Virginia Sharp, John Allen Phillips II, and John R. Hickman, Jr., Plaintiffs in Error,

v.

S. J. SARKEYS, Defendant in Error.

No. 37121.

Supreme Court of Oklahoma.

Nov. 13, 1956.

Rehearing Denied Dec. 18, 1956.

King & Wadlington, Ada, W. M. Rainey, I. O. Correll, Atoka, John Allen Phillips, II, Durant, for plaintiffs in error.

C. L. McArthur, Hobert G. Orton, Ada, for defendant in error.

PER CURIAM.

This action was instituted in the District Court of Atoka County on August 7, 1953, by S. J. Sarkeys, defendant in error, against Eddie Cox, Kenneth Sharp, Virginia Sharp, John Allen Phillips, II, and John R. Hickman, Jr., plaintiffs in error, and others, to quiet title to the E½ of Section 19, Township 1 North, Range 12 East, Atoka County, and for ejectment of certain defendants then in possession. The case was tried to a jury which returned its verdict in favor of plaintiff and from the court's judgment rendered thereon the defendants appearing here as plaintiffs in error perfected this appeal. Hereafter the parties will

be referred to as they appeared in the trial court.

The substance of plaintiff's amended petition was to the effect that he was the owner of the fee simple title in and to the land involved herein; that he acquired his title thereto by virtue of a county deed dated August 4, 1941, and recorded in the office of the county clerk in said county on August 5, 1941; that said county deed was based upon a resale tax deed from the county treasurer to the board of county commissioners under date of May 13, 1941, recorded June 17, 1941. He further pleaded title by prescription based upon 12 O.S. 1951 § 93, and alleged that the defendants were claiming title to said property by virtue of a quit-claim deed, placed of record April 7, 1950, from one Mary B. Blaine to the defendant, Eddie Cox, which deed was champertous and void by reason of 21 O.S. 1951 § 548; that notwithstanding such void deed the defendant, Eddie Cox, during the temporary absence of plaintiff entered into possession of a part of said land and since has maintained a few horses thereupon. He prayed that his title be quieted as against defendants and they be required to deliver immediate possession to that part of said land held by them.

The defendants denied generally and specifically the allegations of plaintiff's petition; specifically denied that plaintiff had ever been in possession of said land or was in possession of same at the date the defendant, Eddie Cox, acquired title thereto from Mary B. Blaine, and alleged that defendants were in possession of all of said land and had been in such possession for a long time prior to the commencement of this action; that Mary B. Blaine was in possession of the land at the time of the execution by her of the quitclaim deed to Eddie Cox; and specifically denied that the plaintiff had acquired any title to the land by prescription at the time Mary B. Blaine conveyed the same to defendant, Eddie Cox.

Although defendants in this court argue sixteen propositions as grounds for reversal, the crux of the appeal is: Whether plaintiff's title to said property under the county deed was perfected under 12 O.S. 1951 § 93; and whether the former record title owner of the property, Mary B. Blaine, was in possession of said property at the date of the execution of her quitclaim deed to the defendant, Eddie Cox.

It is apparent from the stipulation of the parties herein that the resale tax deed upon which plaintiff bases his claim of title under his county deed was void for the reason that the land was advertised for sale for a greater amount of taxes, penalties, interest and costs due and delinquent on the land at the time of the first publication of the notice of re-sale by including the last quarter of taxes not then delinquent. This question is so well settled in this court that the citation of authorities is unnecessary. Therefore plaintiff must recover, if at all, upon his alleged adverse possession of the property.

The evidence discloses that the plaintiff, S. J. Sarkeys, immediately upon securing a county deed to said property on August 4, 1941, through his tenant, Tom Gaylor, took possession of the land; that Gaylor remained in possession, pasturing the land and cutting timber making railroad ties therefrom, during the years 1941 and 1942; that plaintiff placed the land in the hands of Judge Ralls of Coalgate who leased same for plaintiff to one Robert Scivally for pasture purposes for the years 1943 and 1944; that plaintiff thereafter, through Judge Ralls and others attempted to lease the land; that in 1948 in company of his agent, Lawrence Huffman, the plaintiff discovered some men cutting post timber from the land; that he took them to Coalgate where they paid him for the posts; that plaintiff in the year 1950 sold the timber rights in said property to one H. M. Bonds, who cut posts therefrom over a period of 18 months, working a day or two at a time at indefinite intervals. The evidence further discloses that the property herein involved is rough and hilly land, enclosed in a larger tract of some 3000 acres, and is only fit for pasture and

timber purposes; that although being so enclosed several parties pastured the large pasture of which this land was a part but each of those who pastured the property recognized the leases held by the tenants, Gaylor and Scivally; that at no time was the right of H. M. Bond, to cut the timber from the land questioned except that the defendant, Eddie Cox, in the latter part of the year 1950 objected to Bond crossing his land which lay to the north of the land involved and which had to be crossed to get to this particular land. The evidence further discloses that the former record owner, Mary B. Blaine, left that territory in 1927 for California; that she lived in that state since that date; that she died in Orlando, California, in August 1950; that from the year 1928 to the date she conveyed the land to the defendant, Eddie Cox, she had not taken rents or profits therefrom. The evidence further disclosed that plaintiff has paid the taxes on said property for each of the years since 1941 except for the year 1952 which was paid by the defendant, Eddie Cox.

■ In the case of Cox v. Kelley, Okl., 295 P.2d 1061, 1062, second paragraph of the syllabus, we said:

"What constitutes 'possession' of land is a mixed question of law and fact; 'actual possession' consisting of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state."

In McGrath v. Eichhoff, 187 Okl. 64, 100 P.2d 880, 886, this court in discussing adverse possession, said:

" * * * The law does not attempt to list all of the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such a determination in a given case must largely depend upon 'the situation of the parties, the size and extent of the land, and the purpose for which it is adapted.' "

■ In Tucker v. McCrory, Okl., 266 P.2d 433, third paragraph of the syllabus, we held:

"Personal occupancy is not a necessary element of the possession required to perfect prescriptive title and is not contemplated in the periods of limitation prescribed by 12 O.S. 1951 § 93."

■ In Anderson v. Francis, 177 Okl. 47, 57 P.2d 619, 620, third paragraph of the syllabus, we held:

" * * * The payment of taxes is not a controlling circumstance, but it is one of the means whereby a claim of ownership is asserted, and a failure to pay taxes weakens a claim of ownership by adverse possession."

■ Also in Cox v. Kelley, supra, paragraph 3 of the syllabus, is as follows:

"A deed to real property by a grantor out of possession who has not been in possession for a year next preceding date of conveyance, or has not within a year taken rents and profits, or those under whom he claims, is void as against any person or persons in adverse possession."

■ Under the foregoing authorities and the evidence adduced in the trial of the instant case, we can only hold that the acts of plaintiff were sufficient to indicate in an open, public and visible manner that he had exclusive control over the land, under a claim of right to such exclusive possession, and that he had such control and possession at the date of the quitclaim deed under which the defendants now claim title to the premises; also since the former record title owner, Mary B. Blaine, was not in possession of said land at the date she executed such quitclaim deed to the defendant, Eddie Cox, and had not been in such possession for a year next preceding the date of such conveyance, nor had not within a year taken

rents and profits, such quitclaim deed was void in violation of 21 O.S.1951 § 548.

■ However, defendants in their brief argue error committed by the court in giving its instructions to the jury and the refusal to give certain instructions requested by defendants. The first eleven propositions argued by defendants relate to such instructions. In connection with these contentions we must conclude that there was ample evidence to warrant the verdict of the jury, and such verdict under the evidence was correct, and in fact, the only one which would have been justified. This being true, it will not be necessary for us to examine or discuss the instructions given, or those refused, for, be they right or wrong, the verdict under all the evidence is right. Such was the statement of this court in Shawnee Nat. Bank v. Wootten & Potts, 24 Okl. 425, 103 P. 714, wherein this court held:

"Where a verdict and judgment are authorized by the evidence, and another would be unwarranted, the same will not be reversed on appeal on account of errors alleged to exist in the instructions given."

See also Empire Gas & Fuel Co. v. Wainscott, 91 Okl. 66, 216 P. 141; Citizens Bank of Millertown v. Beeson, 104 Okl. 293, 231 P. 844; Dean v. Anson, 128 Okl. 23, 261 P. 174; City of Tulsa v. Pearson, Okl. 296 P.2d 788; Larkins-Warr Trust v. Watchorn Petroleum Co., 198 Okl. 12, 174 P.2d 589.

■ Under their twelfth proposition defendants urge error of the court in refusing and ruling out competent evidence offered by them. This testimony was in relation to the ownership, possession and fencing on certain other tracts of land in the same area, was not in reference to the land involved herein, and was properly excluded. The exclusion of evidence that has no bearing on and does not tend to prove or disprove any issue raised by the pleadings is not error. See, Keahey v. Craig, 186 Okl. 162, 96 P.2d 521; Drumm-Flato Commission Co. v. Edmission, 17 Okl. 344, 87 P. 311.

Defendants next contend in their thirteenth proposition that the court erred in reprimanding counsel in the presence of the jury. The reprimand complained of (appears at page 183 C.M.) is as follows; (Omitting objection of plaintiff's counsel):

"By the Court: Sustained. I am not going to tolerate that sort of questioning any longer."

The record discloses that the trial court had several times sustained objections to the testimony which was being offered; that such testimony did not tend to prove or disprove any issue raised by the pleadings. We do not conclude that such statement by the court was a reprimand of defendant's counsel, nor do we think the jury could have so construed it and defendants become prejudiced thereby.

For their fourteenth proposition, defendants contend that the court erred in overruling their challenge for cause to a juror made by them, where such juror on voir dire examination admitted that he was a tenant of the plaintiff.

While it is true that defendants challenged said juror for cause and was overruled by the court and it thereby became necessary for the defendants to peremptorily challenge said juror who was thereupon excused and did not take part in the trial of the case, there is nothing in the record from which it appears that any other juror objectionable to the defendants was permitted to remain on the trial panel by reason of defendants having had to exercise such peremptory challenge in excusing said objectionable juror, nor is it shown by the record that defendants exhausted all their peremptory challenges; nor is it shown that they desired an additional peremptory challenge.

■ It is a rule of almost universal application that error on the part of the court in overruling a challenge to an objectionable juror is not material, if such juror did not serve as such on the trial of the case and the legal rights of the objecting party were not prejudiced thereby. Therefore in view of the fact that the ob-

jectionable juror in this case was peremptorily challenged and did not serve as a juror in the trial of the case, and further that the record does not show that the defendants exhausted their peremptory challenges, or demanded the right to challenge other objectionable jurors and such right denied them, we cannot consider that they were prejudiced by the action of the trial court in overruling their challenge for cause. See Carney v. Chapman, 60 Okl. 49, 158 P. 1125, and cases therein cited.

Defendants next contend in their fifteenth proposition that the court erred in sustaining plaintiff's motion after the verdict was returned, to correct the verdict as to the description of the land involved.

 In 89 C.J.S., Trial, § 515, p. 198, relating to amendment or correction of jury's verdict by the court, the following rule is found:

"Generally, the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings into effect, where the intention can be ascertained with certainty."

In commenting on this rule the author says:

"While the court has no power to look into the evidence and revise or amend the verdict as to a finding of fact, or in any manner to invade the province of the jury by substituting or adding the conclusion or verdict of the court as to a substantial or material matter, there are numerous cases to the effect that the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings into effect, where the intention can be ascertained with certainty, from statements of the jurors' themselves, the notes of the trial judge, data given in the verdict, or any other clear and satisfactory evidence appearing in the record or the minutes of the trial; but the court cannot properly modify or reform the verdict to effectuate the intention of the jury where there is no certain and unmistakable data by which the court can determine that intention."

 We must here note that the verdict returned into court described the land as the West half of Section 19, when the land involved and made up by the pleadings related to the East half of Section 19. The verdict was prepared by the court reporter and involved a clerical error in misdescribing the land. The error was discovered within a few minutes after the verdict was returned into court and the jury discharged. The plaintiff immediately made motion to correct the error which motion was sustained.

In view of the entire record the jury could not have understood that they had anything to do with any land except that as made up by the issues and the evidence. There was nothing therein indicating that the West half of Section 19 was involved, therefore, we must consider that it was their clear intention to hold for the plaintiff as to the East half of Section 19. Thus, we conclude that it was competent for the trial judge to determine the meaning of the verdict from the record and to correct the verdict accordingly.

In view of our conclusions hereinbefore reached we deem it unnecessary to further consider other questions raised.

Finding no errors which affect the substantial rights of the defendants and concluding that the verdict of the jury and judgment of the trial court rendered thereon is supported by the evidence and clearly just, the judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, JACKSON and CARLILE, JJ., concur.

WELCH, J., concurs in result.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Reed

and approved by Commissioners Crawford and Nease, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.