CHRIST CHURCH PENTECOSTAL, now Wittich Memorial Church, a corporation, Appellant,

v.

George H. RICHTERBERG, Appellee.

No. 7460.

United States Court of Appeals
Tenth Circuit.

July 15, 1964.

Rehearing Denied Aug. 27, 1964.

Leslie L. Conner, Oklahoma City, Okl. (James M. Little, Oklahoma City, Okl., Grester Lamar, Guymon, Okl., and Conner, Little & Conner, Oklahoma City, Okl., of counsel, on the brief), for appellant.

Vincent Dale, Guymon, Okl. (Dale & Dale, Guymon, Okl., Richard W. Fowler and Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Richterberg brought this action against Christ Church Pentecostal to quiet the title to a 160-acre tract of land situated in Texas County, Oklahoma.[1] Richterberg's claim was based upon adverse possession for the statutory period of 15 years.[2]

The facts, as established by the evidence and substantially found by the trial court, are these:

On November 8, 1930, the land was conveyed to Theodore and Beatrice Formhals, as joint tenants. Theodore died September 25, 1941, and the title to the land passed to Beatrice, as surviving joint tenant. On December 30, 1941, Beatrice conveyed the land by quit claim deed to the church. The church is located in Chicago, Illinois, and at the time of such conveyance Beatrice lived in Chicago and was a member of the church. The deed to the church was recorded in the public records of Texas County, Oklahoma, January 26, 1942.

In the latter part of 1942 and the early part of 1943, James H. Martin—a realtor, whose office was located near the church building in Chicago, and who had drafted, acknowledged, and recorded the deed from Beatrice, at the request of the church—and Rall carried on negotiations for the purchase of the land by Rall. About March 5, 1943, such negotiations culminated in a written agreement by which Martin, purporting to act as the agent of the church, agreed to sell and convey the land to Rall for $1600, and Rall agreed to purchase it and make a down payment of $100 and deposit $1500 in escrow with the First State Bank of Elkhart, Kansas, pending approval of title and delivery of the deed. Rall fully performed his part of the contract. Martin was acting as agent for the church with respect to the land, in some respects, but the extent of his authority was not established, and the evidence of the church was to the effect that he was not authorized to negotiate for or agree to a sale of the land. The church did not deliver its deed to the land and on July 15, 1944, advised Martin it did not desire to sell the land at that time, apparently because Beatrice, believing the land had potential oil and gas value, had objected to a sale. On August 8, 1945, the church notified Martin it had definitely decided not to sell the land and asked Martin so to notify Rall and return the down payment.

The land is situated near the Oklahoma-Kansas boundary line. Richterberg, a farmer, resided on a farm one-half mile south of the land here involved. Rall resided at Elkhart, Kansas, where he engaged in the business of grain buyer and elevator manager. The land is located about four miles southeast of Elkhart. In 1928, the Formhals entered into an oral lease of the land to Richterberg as tenant on a crop share rental basis, one-fourth to them and three-fourths to Richterberg. The evidence does not show expressly the term of such lease, but the relation of landlord and tenant on a crop share basis continued between the Formhals and Richterberg until Theodore's death, and thereafter between Beatrice and Richterberg. No written lease was

---

1. Hereinafter referred to as "the land."

2. 12 Okl.St.Ann. § 93; 60 Okl.St.Ann. § 333.

ever entered into between the Formhals, or between Beatrice and Richterberg. Oral leases on a crop share basis of land not occupied as a home are not made for long terms. They customarily are made from year to year, so long as the parties desire the relationship to continue. There apparently was never any express renewal or extension of the original lease, or any new lease entered into between them, after the original lease in 1928. It is fairly inferable that the arrangement was continued by implied agreements made each year from 1928 to 1941.

During the period above referred to, Richterberg cultivated and farmed the land and planted a crop thereon each year, except several years in the early 1930's when extraordinary drouth conditions made the growing of crops impossible. The crops planted were winter wheat and milo. In such period there were several years when no crop was produced, because of drouth, or because the wheat crop was destroyed by hail. When a wheat crop was produced and harvested, Richterberg delivered it to an elevator and sent a check to the Formhals for their share of the rent.

Late in 1942 Richterberg ceased to be a tenant of anyone and ceased to farm or possess the land. Four or five months later and about March 15, 1943, he entered into an oral lease of the land with Rall on a crop share basis, one-fourth to Rall and three-fourths to Richterberg.

Richterberg did not have actual notice or knowledge of the deed of December 30, 1941, to the church until after he entered into the oral lease with Rall in 1943. He never at any time had any dealings, oral or written, or any arrangements, express or implied, with the church with respect to the land. He paid no rent to the church and did not at any time or in any wise recognize the church as his new landlord or agree to pay rent to it. It at no time notified him it had acquired the land or demanded any rent from him. Prior to his oral lease with Rall, he never paid any rent to any person, other than the Formhals.

Rall and Richterberg entered the land in 1943. Thereupon, they began and continued operations to improve the land. They removed mounds of dirt, known as "blow bumps," which had formed thereon, by leveling operations, necessary to render it fit for cultivation; they engaged in spraying to kill bindweed, which had infested the land, and tends to spread and kills all other vegetation it contacts; and they also planted trees to form a windbreak on the land.

There were no fences or buildings on the land, except temporary electrically charged one strand wire fences, which Richterberg erected when he wanted to pasture his cattle on growing winter wheat. That was true of land generally in that area, except tracts on which farmers had their homes. Permanent fences created a problem, because they caused masses of blowing Russian thistle to form along the fence lines.

The church paid the taxes on the land for 1941 and 1942. It mailed a check for the taxes for the year 1943, but it was returned to the church by the County Treasurer of Texas County. The church made no effort thereafter to pay the taxes on the land. Rall paid the taxes for the year 1943 and each year thereafter, to and including 1961. Richterberg paid the taxes in 1962.

Richterberg entered into possession of the land as Rall's tenant in 1943 and continued in such possession, tilled and cultivated the land, planted it to crops, retained his share of the crops produced and rendered Rall's share to him, from 1943, to and including October 24, 1961. On the latter date, Rall executed and delivered a deed to the land to Richterberg and continuously thereafter until the time of the trial below in 1963, Richterberg was in possession of the land, claiming title thereto in his own right through the deed to him from Rall. During that period he exercised complete dominion over the land, cultivated and tilled it, planted it to crops, pastured it, and harvested the crops produced thereon, all for his own benefit.

The records of the local office of the Department of Agriculture, with respect to wheat allotments and other like matters relating to the land, list Rall as the owner and Richterberg as the tenant of the land.

In August, 1950, Rall brought an action against the church in the District Court of Texas County, Oklahoma. The church appeared in the action. In his complaint Rall alleged that on February 3, 1943, he entered into a contract to purchase the land from the church, acting through its duly authorized agent, James H. Martin; set forth the terms of such contract; alleged he had fully complied therewith, and had demanded a conveyance of the land by the church; that he went into possession of the land in 1943, annually thereafter paid the taxes on the land, continued in possession and exercised full and complete control over the land without objection on the part of the church; and that the church made no demand upon him for possession of the land, but refused and continued to refuse to execute and deliver to him a deed therefor. Such action was not brought to issue or trial and on December 20, 1961, was voluntarily dismissed by Rall.

The church had both actual and constructive notice of Rall's adverse possession under claim of right.

The trial court found that Rall was in actual, open, notorious, exclusive, and hostile possession of the land under claim of right from on or about March 15, 1943, until he conveyed the land to Richterberg, and that Richterberg continuously thereafter, until the time of the trial of the action, was in such possession of the land. The trial court concluded that Richterberg had established his title by the adverse possession of himself and Rall for the statutory period of 15 years and entered judgment for Richterberg. The church has appealed.

■ An attornment, in the law of landlord and tenant, after a grant of the leased land by the lessor to another, is an acknowledgment by the tenant of the grantee as his new landlord and, fictionally, of his consent to the grant, and an engagement to pay rent to the grantee and otherwise perform to him the covenants of the lease.[3] Richterberg did not do anything constituting an attornment to the church, under his lease with Beatrice.

In 1941 Beatrice may have extended the oral year to year lease between herself and Richterberg into 1942. But she did not and could not extend the oral year to year lease from 1942 into 1943, because she parted with title to the land in 1941. Richterberg testified that he ceased to be a tenant of anyone and ceased to farm or retain possession of the land for a period of several months from late in 1942 until he entered into the lease with Rall in 1943. The trial court so found. His evidence to that effect was uncontroverted. It is clear that there never was a tenant-landlord relationship between Richterberg and the church.

Moreover, the church pleaded as an affirmative defense that Richterberg unlawfully attorned to Rall by the lease entered into between him and Rall and it failed to establish that affirmative defense by proof that Richterberg was the tenant of either Beatrice or the church at the time of the asserted unlawful attornment.

We conclude that Rall and Richterberg entered into a new and independent oral lease of the land shortly after March 15, 1943, and that Rall's possession of the land thereafter, through Richterberg, was not by virtue of any attornment by Richterberg to the church or to Rall, under any lease theretofore made, but was under a new and independent oral lease and oral renewals and extensions thereof, until Rall deeded the land to Richterberg; and after that date, Richterberg was in possession of the land in his own behalf, until the time of the trial in the court below.

3. 51 C.J.S. Landlord and Tenant § 277, p. 933; In re O'Donnell, 240 N.Y. 99, 147 N.E. 541, 543; Willis v. Moore, 59 Tex. 628, 636; Souders v. Vansickle, 8 N.J.L. 313.

■ Rall, in his action for specific performance against the church, did not recognize any paramount title in the church. What he asserted in that action was wholly consistent with his claim of adverse possession. Since his action was never brought to issue or trial and was voluntarily dismissed by him and was not inconsistent with his asserted adverse possession under claim of right, the bringing of the action did not interrupt the running of the statute of limitations.[4]

■ The land being situated in Oklahoma, the law of Oklahoma controls, and we shall undertake to state the applicable principles of law, as reflected in the decisions of the Supreme Court of Oklahoma.

■ A possession to be adverse must be open, visible, continuous and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of another, but against all titles and claimants.[5]

■ Actual possession of land is a mixed question of fact and law and consists "of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state."[6]

■■ Actual residence on the land or personal occupancy is not a necessary element of the possession required to perfect the prescriptive title.[7] Neither is it necessary that the land be enclosed with a fence.[8] It is sufficient if the claimant "is doing such acts thereon that indicate in an open, public and visible manner that he has exclusive control over the land, under a claim of right to such exclusive possession."[9]

The payment of taxes is one of the means by which the claim of ownership may be asserted.[10]

■ An act of ownership and an adverse claim may be manifested by an oral, as well as a written lease.[11]

■ Where one adverse occupant of land is succeeded by another adverse occupant and there is privity of possession between them and no break in the continuity of the possession, the last one may tack the possession of his predecessor to his, so as to make a continuous adverse possession for the statutory period.[12]

■ Acts of such character and so definite and observable that they would reasonably indicate to an owner of ordinary prudence, should he visit the premises, that ownership adverse to him is being asserted, or sufficient to put him on inquiry, constitute constructive notice of adverse possession.[13]

■ We are of the opinion that an application of the above principles of law to the facts in the instant case compels the conclusion that Richterberg acquired title to the land through adverse possession under claim of right for the statutory period of 15 years.

The judgment is affirmed.

4. Endicott v. Haviland, 220 Mass. 48, 107 N.E. 394; 2 C.J.S. Adverse Possession § 153, p. 724.

5. Kimble v. Allen, Okl., 298 P.2d 1042, 1044; Nolte v. Sturgeon, Okl., 376 P.2d 616, 617.

6: Cox v. Sarkeys, Okl., 304 P.2d 979, 983; Cox v. Kelley, Okl., 295 P.2d 1061, 1067.

7: Tucker v. McCrory, Okl., 266 P.2d 433; Cox v. Sarkeys, Okl., 304 P.2d 979, 983; Cox v. Kelley, Okl., 295 P.2d 1061, 1067; Farris v. Smallwood, 204 Okl. 195, 227 P.2d 644, 646.

8. Fessler v. Thompson, 191 Okl. 450, 130 P.2d 513, 514; Stern v. Franklin, Okl., 288 P.2d 412, 415.

9. Fessler v. Thompson, 191 Okl. 450, 130 P.2d 513, 514; Stern v. Franklin, Okl., 288 P.2d 412, 415.

10. Anderson v. Francis, 177 Okl. 47, 57 P.2d 619, 622; Cox v. Sarkeys, Okl., 304 P.2d 979, 983; Cox v. Kelley, Okl., 295 P.2d 1061, 1067.

11. Redwine v. King, Okl., 366 P.2d 921, 927, 928.

12. Harris v. Grayson, 146 Okl. 291, 294 P. 187, 193, 194.

13. 2 C.J.S. Adverse Possession § 45b(2), pp. 561–564.