DOUGLAS–GUARDIAN WAREHOUSE CORPORATION, a corporation, Plaintiff,

v.

J. R. JORDAN et al., Defendants.

No. 76–141–C.

United States District Court, E. D. Oklahoma.

June 27, 1978.

Alpheus Varner, Poteau, Okl., for plaintiff.

Roy Frye, Jr., Sallisaw, Okl., for defendants.

## MEMORANDUM OPINION

MORRIS, Chief Judge.

In this action plaintiff seeks to establish title in itself to Lots 2 and 3, Section 28, Township 10 North, Range 25 East, which land is presently situate approximately a quarter of a mile east of the left bank (looking downstream) of the Arkansas River, or in other words, east of the river on the Sequoyah County side in Oklahoma. At the time of the original United States survey in 1898 the land was on the right bank (looking downstream) of the Arkansas River, that is to say, it was west of the river on the LeFlore County side. By way of counterclaim defendant John Jordan seeks to quiet title in the same land in himself. Defendants J. R. Jordan and Bert Richards disclaimed any interest in the property prior to trial.

The parties have stipulated in the pretrial order inter alia that (1) the defendant, or his predecessor in ownership, was in possession when this action was filed and summons served; (2) plaintiff's chain of title to the property, beginning with ownership by the Choctaw Nation and continuing through a marshal's deed executed by the United States Marshal for the Eastern District of Oklahoma, as grantor, to plaintiff, as grantee, dated September 4, 1969, is conceded, and plaintiff will not be required to prove the chain of its title, except that defendant alleges that plaintiff acquired no title to the real estate by virtue of the marshal's deed; (3) plaintiff concedes that defendant claims under a tax title from Sequoyah County, but does not concede that the tax deed is valid; and (4) the land involved is situate within the Eastern District of Oklahoma and consists of approximately sixty acres worth at least $500.00 per acre.

Plaintiff alleges that defendant is wrongfully in possession of the land because the certificate tax deed issued by the county treasurer of Sequoyah County on May 26, 1971 to J. R. Jordan is void, since the lands described in it were situate in LeFlore County at the time the deed was executed and delivered, but even if the property was taxable in Sequoyah County, the tax deed is nevertheless void, according to plaintiff, on account of irregularities in the proceedings leading up to the tax deed. Plaintiff claims that it was not deprived of its title by virtue of the loss of the land to the river by reliction and its reappearance and by movement of the Arkansas River bed, whether by accretion or avulsion, and plaintiff alleges that the land was taxable only in LeFlore County.

Defendant contends that the land in question was originally on the LeFlore County side of the river and the river slowly moved to the west for a period of years so that during the 1940's to the 1950's the land was in Sequoyah County, Oklahoma. Defendant claims that by 1957 the land had accreted to the Sequoyah side and that the river had moved slowly and imperceptibly. Defendant claims title to the land under the Sequoyah County certificate tax deed of May 26, 1971 to J. R. Jordan, and he claims that he acquired prescriptive title to the real estate by virtue of having been in adverse possession of the land for more than fifteen years next preceding the filing of this action. Defendant further contends that under 12 Okla.Stat. § 93(3) plaintiff is barred from bringing this action since its title is based upon a tax deed recorded on January 13, 1958 which is more than five

years prior to the filing of the instant action on May 19, 1976, and that neither plaintiff nor its predecessor in title, George W. Jones, have ever been in possession of this real estate. The case was tried to the court sitting without a jury on February 2, 1978, in Muskogee, Oklahoma. Because defendant's adverse possession claim is dispositive, the other issues urged by the parties are not addressed.

The land described as Lots 2 and 3, Section 28, Township 10 North, Range 25 East, which is presently on the Sequoyah County side of the Arkansas River in Oklahoma, was at the time of the original United States survey in 1898 on the LeFlore County side of the river. *Compare* Plaintiff's Exhibits 1, 1–A, and 1–B *with* Plaintiff's Exhibit 35. Defendant John Jordan lives in Muldrow, Oklahoma. He has been a farmer and rancher since 1938, and he has known the land involved in this action since the 1940's. He now lives, and has lived since 1938, 2 to 2½ miles northeast of the land. He has lived in this vicinity all his life. The land in question is level and cleared; there are only a few trees on it and it consists of sandy soil. On the south end there is a road and some big cottonwood trees. See Defendant's Exhibits 1 through 4. The Arkansas River runs from north to south at this point. Defendant has been aware of the movements of the river since 1940. That year the land was in the river except for 10 acres which were on its east bank. See Plaintiff's Exhibits 4 & 5. The river moved slowly to the west from 1940 up through the 1950's. In 1950 approximately 40 acres were out on the northeast side of the river.

The defendant entered upon the land in the 1940's, about 1945, used it for watermelons, and continued to use it for agricultural purposes until 1957. In that year the land was taken by the river during a flood. No one else used the land during those years; the defendant did not acknowledge ownership in anyone else and did not pay rent to anyone.

In the summer of 1960 the defendant cleaned up the land and in 1961 planted and harvested crops consisting of soybeans, oats and hay. From 1960 until now he has claimed ownership, was recognized as the owner by two neighbors who rented the land from him for several years, and has himself used the land continuously for agricultural purposes, raising soybeans and hay.

In the beginning physical access to the land was through Leroy Brandt's land which lies to the north. In July 9, 1960 (the day the photograph which is plaintiff's Exhibit 10 was taken) a portion of the land in question was covered by river water. No testimony was adduced concerning whether on that day the river was high or low or about normal. It is uncontroverted, however, that some time in 1960 the defendant cleaned up the land and that in 1961 he planted and harvested soybeans, oats and hay. On August 7, 1961 (the day the photograph which is plaintiff's Exhibit 12 was taken a substantially greater portion of the land appears to have been out of the water than appeared to be out of the water on July 9, 1960 (Plaintiff's Exhibit 10). The testimony does not establish whether on August 7, 1961 the river was high, low or about normal.

The red marks across the river as shown on plaintiff's Exhibits 10 and 12 represent the location of a low water bridge which the Corps of Engineers converted into a dike or revetment in 1961 or 1962. This low water bridge, later to become a revetment, provided defendant an additional way of access to the land. In 1960 or 1961 the Corps of Engineers, using a drag line, cut a new channel to the west of the old channel. It runs roughly parallel to the old channel at this point. The new channel is marked in red as # 1 and the old channel is marked in red as # 2 on plaintiff's Exhibits 12 and 13. The new channel, together with the several revetments indicated by red "x" marks as shown on plaintiff's 13, had the effect of keeping the river in the new channel. All movements of the river except for the 1957 flood were slow and gradual.

In 1960 or 1961 Evitts Haley, who has lived in the immediate vicinity of the land since February 1952, and who owns land

two miles away, leased the land from the defendant for cash. He rented for one full year and maybe two. He plowed part of the land, put in a forage hybrid crop, crossed with his pickup and tractor on the low water rock bridge on the south end and built a fence across the south end, tying it to a rock pier. He knew defendant had been farming the land prior to the time he leased.

James Clemens, also a neighbor, was familiar with the land in question and has been since 1962. He knew that defendant used it for agricultural purposes from 1962 forward, growing soybeans and hay. In 1965, 1968 and 1969 he leased the land from the defendant and paid the rent to him.

Plaintiff's immediate predecessor in title was George W. Jones. Jones acquired a tax title to the land by a county tax deed from LeFlore County in 1958. Plaintiff's Exhibit 19A at 45. Plaintiff obtained a judgment against Jones in 1965 in the United States District Court for the Eastern District of Oklahoma, which formed the basis for the Marshal's Deed to plaintiff in 1969. Plaintiff's Exhibit 20A. In 1967 Jones and his wife conveyed the land by quitclaim deed to Marion B. Wise, Jr. Plaintiff's Exhibit 19A at 61.

Defendant's son, J. R. Jordan, obtained a County Treasurer's Certificate Tax Deed from Sequoyah County on May 26, 1971 (Plaintiff's Exhibit 28), and he and his wife conveyed the land to his father, the defendant, by warranty deed on November 9, 1976. Defendant's Exhibit 5. The defendant has paid taxes on the land for the years 1972 through 1977 and he continues to pay the taxes. He has paid all the taxes reflected on defendant's Exhibit 6 even though some of the receipts are made out to his son, J. R. Jordan. The defendant and his son obtained the tax deed so that the defendant would have a better title.

The sum of the testimony by all witnesses for both plaintiff and defendant who knew the possession history of the land is:

1. From 1960 when defendant cleaned up the land to the present date, defendant has claimed ownership, has cultivated, harvested, farmed and has personally and through his tenants been in continuous possession. He has never recognized plaintiff or its predecessor in title as the owner and has never paid any rent to plaintiff or its predecessor in title.

2. Plaintiff has never been in possession or used the land in any way.

3. George W. Jones, plaintiff's immediate predecessor in title, has never been in possession or used the land in any way. The defendant never talked to Jones about the land.

4. Marion B. Wise, Jr., the grantee from Jones and his wife in the quitclaim deed dated June 16, 1967, has never been in possession or used the land in any way.

Oklahoma has the following limitation periods for actions relating to real property:

§ 93. Limitation of real actions

Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter:

(1) An action for the recovery of real property sold on execution, or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed pursuant to partition proceedings, or other judicial sale, or an action for the recovery of real estate distributed under decree of county court in administration or probate proceedings, when brought by or on behalf of the execution debtor or former owner, or his or their heirs, or any person claiming under him or them by title acquired after the date of the judgment or by any person claiming to be an heir or devisee of the decedent in whose estate such decree was rendered, or claiming under, as successor in interest, any such heir or devisee, within five (5) years after the date of the recording of the deed made in pursuance of the sale or proceeding, or within five (5) years after the date of the entry of the final judg-

ment of partition in kind where no sale is had in the partition proceedings; or within five (5) years after the recording of the decree of distribution rendered by the county court in an administration or probate proceeding; provided, however, that where any such action pertains to real estate distributed under decree of county court in administration or probate proceedings and would at the passage of this act be barred by the terms hereof, such action may be brought within one (1) year after the passage of this act; this proviso shall not be construed to revive any action barred by paragraph 4 of this section.

(2) An action for the recovery of real property sold by executors, administrators, or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person, or the ward of his guardian, or any person claiming under any or either of them, by the title acquired after the date of judgment or order, within five (5) years after the date of recording of the deed made in pursuance of the sale.

(3) An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed, except where lands exempt from taxation by reason of any Act of the Congress of the United States of America have been sold for taxes, in which case there shall be no limitation; provided, nothing herein shall be construed as reviving any cause of action for recovery of real property heretofore barred nor as divesting any interest acquired by adverse possession prior to the effective date hereof.

(4) *An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years.*

(5) An action for the forcible entry and detention or forcible detention only of real property, within two (2) years.

(6) Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon

which such deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise; provided that this paragraph shall not be applied so as to bar causes of action which have heretofore accrued, until the expiration of one (1) year from and after its effective date.

12 Okl.Stat. § 93 (emphasis added). 60 Okl. Stat. § 333 provides:

Occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all.

In order to establish title to land by adverse possession in Oklahoma the possession "must be open, visible, continuous and exclusive, with claim of ownership such as will notify parties seeking information upon the subject that premises are not held in subordination to any title or claim of others, but against all titles and claimants." *Sears v. Oklahoma*, 549 P.2d 1211, 1213 (Okl.1976); *Loris v. Patrick*, 414 P.2d 249, 252 (Okl.1966); *Christ Church Pentecostal v. Richterberg*, 334 F.2d 869, 874 (10th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702 (1965). The proof must be clear and positive on the constituent elements of actual, open, notorious, exclusive and hostile possession for the statutory period. *Kouri v. Burnett*, 415 P.2d 963, 967 (Okl.1966); *Loris v. Patrick*, 414 P.2d 249, 252 (Okl.1966); *Norman v. Smedley*, 363 P.2d 839, 843 (Okl.1961). Actual possession of land consists of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state. *Christ Church Pentecostal v. Richterberg*, 334 F.2d 869, 874 (10th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702 (1965).

Actual residence on the land or personal occupancy is not a necessary element of the possession required to perfect the prescriptive title. Neither is it necessary that the land be enclosed with a fence.

It is sufficient if the claimant "is doing such acts thereon that indicate in an open, public and visible manner that he has exclusive control over the land, under a claim of right to such exclusive possession."

334 F.2d at 874 (footnotes omitted). *See Fessler v. Thompson*, 191 Okl. 450, 130 P.2d 513 (1942).

 The payment of taxes on land is not controlling, but is one means whereby claim of ownership is asserted. Failure to pay taxes weakens a claim of ownership by adverse possession. *Sears v. Oklahoma*, 549 P.2d 1211, 1213 (Okl.1976); *Tindle v. Linville*, 512 P.2d 176, 178 (Okl.1973); *Kouri v. Burnett*, 415 P.2d 963, 969–70 (Okl.1966); *Loris v. Patrick*, 414 P.2d 249, 252 (Okl. 1966); *Christ Church Pentecostal v. Richterberg*, 334 F.2d 869, 874 (10th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702 (1965).

Acts of such character and so definite and observable that they would reasonably indicate to an owner of ordinary prudence, should he visit the premises, that ownership adverse to him is being asserted, or sufficient to put him on inquiry, constitute constructive notice of adverse possession.

334 F.2d at 874 (footnote omitted). The determination of what constitutes adverse possession depends upon the circumstances of each particular case and should take into consideration the situation of the parties, size and extent of the land, and the purpose for which it is adapted. *Sears v. Oklahoma*, 549 P.2d 1211, 1213 (Okl.1976).

 The court is convinced, as was the Tenth Circuit in *Richterberg*, that an application of the above principles of law to the facts in the instant case compels the conclusion that defendant acquired title to the land through adverse possession under claim of right for the statutory period of fifteen years. Defendant has clearly proved all the elements of adverse possession set out above. The statutory period began to run in this case in the summer of 1960 when defendant cleared the land, and the 15 year period had accordingly run

when plaintiff filed this action on May 19, 1976. The testimony of the 6 witnesses called by the defendant, in addition to the defendant himself, that the defendant has used the land since 1960 and has farmed it since 1961 stands uncontroverted. Even Mr. Sharp, called in rebuttal by plaintiff, admitted that he knew defendant had been farming the land for 10 or 12 years and he never knew of anyone else who ever used the land. Defendant's acts of clearing the land, planting crops during those years when he did not have the land leased out, granting leases with respect to the land during several years for the purpose of having his lessees farm it, and paying taxes on the land since 1972 clearly show actual, open, notorious, exclusive, continuous and hostile possession under a claim of right for the statutory period.

Plaintiff did not question defendant's use of the land or attempt in any way to prevent his continual use thereof during the statutory period. In addressing a similar situation the Oklahoma Supreme Court stated:

The clear weight of the evidence discloses that appellant, under claim of right against the whole world, used and had possession of all the tract in dispute, openly, peaceably and exclusively for more than 15 years. During that period of time no one questioned her use or possession and claimed no right or asserted any interest in the property. Appellant and her husband had used and been in possession of the property more than fifteen years when appellees acquired their title. Even after appellees acquired their title they did not question appellant's use of the land nor assert any ownership therein.

We hold that from the record presented, appellant acquired title by prescription to all the tract in dispute and the trial court erred in rendering judgment for appellees.

*Leach v. West*, 504 P.2d 1233, 1238 (Okl. 1972).

 Plaintiff contends, however, that the aerial photographs introduced into evi-

dence show that the land was in the river during some of the periods during which defendant allegedly farmed the land. The court cannot conclude on the basis of photographs which show that some of the land was under water on the day a particular photograph was taken that defendant or his lessees were not exercising dominion over the land "in making the ordinary use of it and taking the ordinary profits it [was] capable of yielding in its . . . state" at that time. *Christ Pentecostal v. Richterberg*, 334 F.2d 869, 874 (10th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 719, 13 L.Ed.2d 702 (1965). The photographs do not refute in any manner, whatsoever, the *uncontroverted* testimony of defendant and several of his neighbors, who have been familiar with the land and have known the defendant for a long period of time, that defendant has been in continuous possession of the land since the summer of 1960. Moreover the

> fact that land is covered by water does not render the acquisition of title thereto impossible. Indeed, where such land is the subject of private ownership, adverse possession thereof may be acquired by any means which actually and notoriously exclude and disseise the true owner therefrom.

3 Am.Jur.2d *Adverse Possession* § 203 (1962).

Plaintiff further argues that the journal entry of judgment in a quiet title suit entered on October 22, 1971 in the District Court of LeFlore County, Oklahoma, Case No. C–71–176, which makes a finding that plaintiff was in possession of the land at that time establishes that plaintiff was in fact in possession. See Plaintiff's Exhibit 19A, at 67, 71. It is significant to note, however, that plaintiff did not join this defendant John Jordan as a defendant in that quiet title action. That judgment is accordingly not dispositive of plaintiff's and defendant's rights with respect to the subject land; as between these parties it does not adjudicate the fact question of possession. As to that fact question the evidence is clear and *uncontroverted* in this case that neither plaintiff nor its imme-

diate predecessor in title, George W. Jones, were ever in possession of the land or any part thereof.

On the basis of the evidence adduced the court concludes that defendant acquired title by prescription to the land in dispute pursuant to 12 Okl.Stat. § 93(4) and 60 Okl.Stat. § 333. Judgment will be entered in conformity herewith.